```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LAMONT G. CRYMES | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 04-4450 (JBS) |
| v. | |
| ATLANTIC COUNTY GOVERNMENT, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Lamont G. Crymes
a/k/a Muzzammil Hagg
SPN # 445599/751428-A
Riverfront State Prison
P.O. Box 9104
Camden, New Jersey 08101
    Plaintiff pro se

Kevin W. Lynch, Esq.
WHITE AND WILLIAMS LLP
LibertyView
457 Haddonfield Road, Suite 400
Cherry Hill, New Jersey 08002-2220
    Attorney for Defendants

**SIMANDLE**, District Judge:

   Plaintiff Lamont Crymes seeks recovery under 42 U.S.C. § 1983 for violation of his right to receive medical care for a dislocated finger suffered while confined in the Atlantic County Justice Facility.  This matter comes before the Court upon the motion for summary judgment of Defendants Atlantic County Government; Board of Chosen Freeholders, the governing body of Atlantic County; Dennis Levinson, Executive of Atlantic County;

Gary Merline, Warden of Atlantic County Justice Facility; Atlantic County Justice Facility ("ACJF"); Atlantic County Justice Facility Medical Department;[1] and Prison Health Services, Inc. ("Atlantic County Government") pursuant to Federal Rule of Civil Procedure 56.  In the alternative, Defendants argue that Plaintiff fails to state a viable claim against Dennis Levinson and Gary Merline because respondeat superior does not provide a basis for liability in suits brought under 42 U.S.C. § 1983.  In addition, Defendants assert that Plaintiff's Complaint should be dismissed for noncompliance with the administrative remedies prior to filing suit.  For the reasons discussed herein the motion for summary judgment will be granted.

## I. BACKGROUND

On February 10, 2003, Plaintiff Lamont Crymes, who was an inmate at ACJF, injured his left middle finger while playing basketball on the prison grounds.[2]  (Compl. at ¶ 3; see Crymes Deposition at 13:4-9.)  Plaintiff was later escorted to the medical department, where he was treated by a nurse.  (Crymes Dep. at 13:11 to 15:19.)  The nurse examined Plaintiff's finger and advised him that he would not be sent to a hospital for

---

[1] Defendant contends that ACJF and the Atlantic County Justice Facility Medical Department are sub-divisions of the Department of Public Safety and not separate entities.  (Pl. Br. at 2.)

[2] Plaintiff has since been transferred to the Riverfront State Prison in Camden, New Jersey.  (Def. Br. at 2.)

2

further examination and treatment that day. (Id. at 14:17-25.) The nurse could not find a splint or a sling apparatus, so she taped Plaintiff's middle and next finger together and sent him away with some painkiller medication. (Id. at 15:1-11.)

On the next day, February 11, 2003, Dr. James E. Kovacs performed an x-ray of Plaintiff's injured finger and concluded that the injured finger was in fact dislocated. (See Def. Ex. G.) Finally, on February 13, 2003, after repeated requests, Plaintiff was examined by Dr. Ramon Acosta. (Pl. Br. Ex. A-1; see Crymes Dep. 17:11 to 18:12.) Dr. Acosta analyzed Plaintiff's injury and informed Crymes that arrangements would be made to send him out to a medical facility for further treatment. (Crymes Dep. 20:6-10.) The next day, Plaintiff filled out an Inmate Complaint Form addressed to the Division Director (Warden) stating that his finger was infected and that he needed the warden's assistance. (Pl. Br. Ex. G.) Plaintiff thereafter received a reply from Mr. Lamont Cruz of the Department of Social Services indicating that Plaintiff would be seen by the medical department. (Crymes Dep. 22:5-13.)

The next treatment Plaintiff received was on February 21, 2003 by Dr. Stanley C. Marczyk at Atlantic Shore Orthopedic Associates. (Id. at 22:22 to 23:9.) Dr. Marczyk tried unsuccessfully to push Plaintiff's dislocated finger back into place and ultimately put a splint on Plaintiff's finger and sent

him back to ACJF.  (Id. at 25:10-16.)  When Plaintiff returned to ACJF, an officer took his splint off under the premise that it may be used as a weapon.  (Id. at 25:18 to 26:15.)  As a result of the alleged inadequate medical care and the delay in being transported to an orthopedic specialist, Plaintiff argues that Atlantic County Government caused the "permanent [l]exion [d]eformity" of his left middle finger.  (Compl. at ¶ 3.)

On March 20, 2003, Plaintiff was transferred to the New Jersey Department of Corrections at the Central Reception and Assignment Facility in Trenton, New Jersey.  (Def. Br. at 3.)  On or around April 26, 2003, Crymes was again transferred to Southern State Correctional Facility in Delmont, New Jersey. (Dep. at 29:1-3.)  Later, he was transferred to Riverfront State Prison in Camden, New Jersey where he is currently in custody. (See supra n.2.)

Plaintiff filed a seven-count Complaint in this Court on September 15, 2004 against the Atlantic County Government alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983.  In support of his claim, Crymes alleges an Eighth Amendment[3] violation suggesting he was subjected to cruel and unusual punishment as a result of "deliberate and willful [i]ndifference to [his] welfare."  (Pl. Statement of Jurisdiction

---

[3] The Eighth Amendment states: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

4

attached to Compl.)  On March 22, 2005, Defendants filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.  DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

5

be resolved in favor of either party."  Anderson, 477 U.S. at 250.

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

The nonmoving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citations omitted).  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Anderson, 477 U.S. at 249-50.

B.   Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Furthermore, exhaustion of all administrative remedies is mandatory whether or not the inmate believes such administrative remedies to be effective. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). All inmates should have a copy of the Inmate Handbook Rules and Regulations which outlines the administrative process for all grievances. (<u>See</u> Def. Br. Ex. E.) Specifically the handbook states that a complaint must be filed with the warden "within 30 days from the date the incident occurred." (<u>Id.</u>)

    Inmate grievances can be dealt with in two ways: informal resolution[4] or administrative appeal. (Def. Br. Ex. E.) If the problem cannot be resolved through the informal program, inmates may file a written request to the warden for an administrative remedy. (<u>Id.</u>) The grievance must be filed "within 30 days from the date the incident occurred . . . [and] the [w]arden will make his decision within 15 working days." (<u>Id.</u>) Here, Plaintiff did file a complaint addressed to Warden Gary Merline on February 14, 2003. (Pl. Br. Ex. G.) In the complaint, Plaintiff described the injury and the amount of treatment he had received. (<u>Id.</u>) Crymes requested a reply from the warden, yet received a response from Lamont Cruz instead. (Crymes Dep. at 35:2-22.) Although

---

[4]The staff of ACJF strongly encourages inmates to come to an informal resolution with the staff before filing a complaint for an administrative remedy. (<u>See</u> Def. Br. Ex. E.)

the complaint was not answered by Gary Merline, it was properly addressed to the warden and therefore complied with the procedure outlined in the Inmate Handbook.  As a result, Defendant's claim that Plaintiff did not exhaust all administrative remedies prior to filing suit fails.

C.   Eighth Amendment Allegation

   1.   Deliberate Indifference Standard

The gravamen of Plaintiff's civil rights claim is that Defendants violated his Eighth Amendment rights by declining to immediately transport him to a medical facility after his accident, thus not affording him proper medical treatment.[5]  In order to successfully prove an Eighth Amendment violation, a prisoner must show that he was subjected to "cruel and unusual punishment."  It is well-settled that those actions which are "incompatible with the evolving standards of decency" or impose "unnecessary and wanton infliction of pain" are violative in nature to the amendment.  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted); See, e.g., Gregg v. Georgia, 428 U.S. 153 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).  In Estelle, the Supreme Court interpreted this broad standard to mean that prison officials can be held liable upon a showing of "deliberate indifference to serious medical needs of prisoners."  429 U.S. at

---

[5]The government has an obligation to provide medical care to those who are incarcerated.  See Estelle v. Gamble, 429 U.S. 97, 103 (1976).

8

104.

The Supreme Court has also developed a two-prong test of subjective and objective components to assist in analyzing the presence of deliberate indifference toward prisoners' medical conditions. The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. 25, 32 (1993) (quoting Rhodes v. Chapman, 452 U.S. 337, 346). This component requires that the deprivation sustained by an inmate be sufficiently serious, for only "extreme deprivations" violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Under the subjective component, an inmate must prove that a prison official acted with deliberate indifference "to a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 828 (1994). A prison official acts with deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Thus, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. In other words, deliberate indifference can be evinced where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial,

necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment." Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)); see also Lanzaro, 834 F.2d at 346 (stating that deliberate indifference can be shown where prison officials impose "interminable delays and outright denial of medical care to suffering inmates").

Additionally, a court may probe into the mental state of the prison officials who are alleged to have created the inhumane confinement conditions for the claimant. Wilson, 501 U.S. at 299. "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and closer to subjective recklessness. Farmer v. Brennan, 511 U.S. at 834-39. However, every claim of inadequate medical care brought by a prisoner will not state a claim for Eighth Amendment violation, such as those claims for medical negligence as contrasted with deliberate indifference. Estelle, 429 U.S. at 105.

2. Application of the Deliberate Indifference Standard

Upon review of Plaintiff's claim, and giving Plaintiff the benefit of all reasonable factual inferences, it cannot be shown that the prison officials acted with deliberate indifference to his medical needs. After Plaintiff Crymes' injury on February 10, 2003, he was taken to the medical department by a prison guard, examined by a nurse, a radiologist, and a treating

10

physician before being sent to an orthopedic specialist on February 21, 2003, as described supra. This clearly shows that not only did many prison officials and medical personnel have knowledge of Plaintiff's injury, but he was also not deprived of medical treatment.

Crymes contends that his medical treatment was inadequate and prison officials delayed sending him to an outside hospital for further examination, thereby disregarding his injury. (See Pl. Br. Ex. E; Pl. Br. Ex. G.) In support of his argument, Plaintiff points out that he filled out an Inmate Accident Report, wrote letters to prison officials, and filed an Inmate Complaint Form in response to the lack of medical treatment that he was receiving. (Id.) This Court finds, however, that Plaintiff's treatment was adequate and not disregarded by the prison officials. See Lanzaro, 834 F.2d at 346 (stating that mere "disagreement as to proper medical treatment [will not] support a claim of an [E]ighth [A]mendment violation). It is clear that Plaintiff was examined by several licensed professionals, as described supra, which demonstrates the prison's responsiveness to his medical conditions. Specifically, Crymes was given an x-ray the day after his accident and seen by a physician two days later. (Pl. Br. Ex. A-1; Pl. Br. Ex. B.) Shortly thereafter, Plaintiff was sent to an outside facility for an examination by an orthopedic specialist. (Crymes Dep. at 22:22 to 23:9.) In light of all of Plaintiff's treatment, it is

11

apparent that the medical attention given to him was adequate.

Plaintiff also argues that his finger injury was serious and was so confirmed "7 to 21 months [after the accident] and that the eleven day delay in receiving [o]rthopedic care . . . [was] the direct cause." (Pl. Br. at 13.) In assessing Plaintiff's finger, the medical professionals must not have perceived the injury to be serious enough for immediate outside care. Minor injuries "in which the seriousness . . . would be apparent to a lay person" need not receive immediate hospital care to satisfy prisoners' due process. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). Even if, in hindsight, the intensity of these medical examinations was not optimal, or even if the medical personnel were mistaken in their perception of the seriousness of Plaintiff's dislocation, such circumstances speak, at most, of negligence and not of deliberate indifference. such circumstances, even if proven, do not rise to the level of an actionable violation of the Eighth Amendment's cruel and unusual punishment clause.

D. Respondeat Superior

Normally, Section 1983 claims which rely upon a theory of respondeat superior will not sustain a viable claim. See Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). However, prison officials holding supervisory positions may be held liable if they have "direct responsibility for the actions

12

of the employees who engage in misconduct." Rizzo v. Goode, 423 U.S. 362, 375-76 (1976). Supervisory liability can be shown in two ways, "either 'through allegations of personal direction or of actual knowledge and acquiescence.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Defendants Gary Merline and Dennis Levinson argue that they were never directly involved in the incidents surrounding Plaintiff's injury. (Def. Br. at 12.) Furthermore, Defendants Merline and Levinson point to Plaintiff's testimony that he never had any direct, indirect or personal contact with Dennis Levinson. (Id. at 12-13; see Crymes Dep. 38:9 to 40:1.) Likewise, Plaintiff testified that he "never saw the warden, nor did the warden make general rounds to the pod in the Atlantic County Justice Facility from December the 13th, the day [he] was delivered to his custody and care, until the time [he] left." (Crymes Dep. 40:14-18.) Plaintiff maintains that Dennis Levinson should be liable because of his responsibility of "supervis[ing] the orderly running of the ACJF." (Id. at 38:14-17.) Plaintiff also notes that he did attempt to make contact with Warden Merline through the mail but received a response from Lamont Cruz, a Social Services employee. (Id. at 22:4-13.)

It is immaterial whether Plaintiff wrote a letter addressed to Warden Merline if it was received and answered by someone else. Plaintiff's testimony that he attempted to contact the warden does not prove that Mr. Merline ever had any actual

13

knowledge of Plaintiff's injury or gave any personal direction regarding the medical treatment administered.  Similarly, Plaintiff offers no evidence that Dennis Levinson was involved in any way with the incidents surrounding Crymes' injury. Therefore, neither Mr. Levinson nor Mr. Merline can be held liable under a theory of <u>respondeat</u> <u>superior</u>.  Moreover, in the absence of underlying liability for an Eighth Amendment violation, as found above, there can be no supervisory liability in any event.

### III.  <u>CONCLUSION</u>

For the above stated reasons, the motion for summary judgment by all Atlantic County Government Defendants will be granted.  The accompanying Order will be entered.


**August 4, 2005**                          _s/ Jerome B. Simandle_
DATE                                        JEROME B. SIMANDLE
                                            United States District Judge