<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONT G. CRYMES, a/k/a MUZZAMIL HAGG,<br><br>    Plaintiff,<br><br>  v.<br><br>ATLANTIC COUNTY GOVERNMENT, <u>et al.</u>,<br><br>    Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 04-4450 (JBS)<br><br>**OPINION** |

APPEARANCES:

Lamont G. Crymes, a/k/a/
Muzzammil Hagg
Riverfront State Prison
751428A
P.O. Box 9104
Camden, NJ 08101
    Plaintiff <u>Pro</u> <u>Se</u>

John A. Talvacchia, Esq.
STAHL & DELAURENTIS, P.C.
1103 Laurel Oak Road
Suite 103
Voorhees, NJ 08043
    Attorney for Defendant Ramon Acosta

**SIMANDLE**, District Judge:

    Pro se plaintiff, Lamont G. Crymes (hereafter "Plaintiff") brought this cause of action under state law and 42 U.S.C. § 1983 for a violation of his right to receive medical care for a dislocated finger suffered while incarcerated in the Atlantic

County Justice Facility.[1]  Before the Court is a motion for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P., brought by Defendant Dr. Ramon Acosta, M.D. (hereafter "Defendant") as to Plaintiff's claims of medical negligence under New Jersey law and 42 U.S.C. § 1983.[2]  For the following reasons, Defendant Acosta's motion for summary judgment will be granted in part and denied in part.

**I. Background**

On February 10, 2003, Plaintiff Lamont Crymes injured his left middle finger playing basketball while incarcerated in the Atlantic County Justice Facility (hereafter "ACJF").  (Compl. at ¶ 3; Def. Br. at Ex. D.)  Plaintiff was escorted to the ACJF's medical department where nurse Geraldine Doe examined Plaintiff's finger and advised him that he would not be sent to a hospital that day.[3]  (Def. Reply Br. at Ex. A.)  On February 11, an x-ray revealed that his left third finger was dislocated. (Radiological report of Dr. James E. Kovacs, M.D.; Pl. Br. at Ex. G.)

---

[1] Plaintiff is currently incarcerated in Riverfront State Prison in Camden, New Jersey.

[2] However, for purposes of the state law medical negligence claim, this motion would be more properly characterized as a Rule 12(b)(6) motion for failure to state a claim.

[3] There is nothing in record to indicate why Defendant was not sent to a hospital that night.

Plaintiff was examined by Defendant, Dr. Ramon Acosta, M.D.,[4] on February 13, 2003.  (Pl. Br. at Ex. B.) Defendant, after reviewing the records and radiologic report, examined Plaintiff's finger.  (Id.)  Defendant then ordered an orthopedic consult so the finger could be evaluated by a specialist.  (Id.) Plaintiff was advised to continue his prior treatment which included splinting, elevation, ice and Motrin.  (Id.)  Defendant also submitted the necessary paperwork (a Utilization Review Request for Outpatient Referral) for Plaintiff to be seen by an orthopedist.  (Id. at Ex. C.)

ACJF approved the request for orthopedic consultation on February 14, 2003, and an appointment was made with Atlantic Shore Orthopedic Association for the following week.[5]  (Def. Br. at Ex. D and E.)  On February 21, 2003, 11 days after the injury, Plaintiff was examined by co-defendant Dr. Stanley C. Marczyk at the Atlantic Shore Orthopedic Association.  Dr. Marczyk tried

---

[4] Dr. Ramon Acosta is a family practice physician who contracted with Correctional Medical Care, Inc., to provide medical services at Atlantic County Justice Complex.  Defendant's name was spelled incorrectly as Ramon Acostanzio in Plaintiff's Complaint.

[5] It is not clear why Plaintiff could not have been seen by an orthopedist (whether at Atlantic Shore Orthopedics Association or other orthopedics practice) sooner that eight days after Dr. Acosta ordered the consult.  Also, neither party mentions whether Acosta (1) advised anyone that Plaintiff should be seen sooner than eight days later or (2) made any efforts to have Plaintiff seen by an orthopedic specialist sooner than eight days post-exam.

unsuccessfully to push Plaintiff's dislocated finger back into place and ultimately put a splint on Plaintiff's hand.  (See Def. Reply Br. at Ex. A.)  When Plaintiff returned to ACJF, an officer took his splint off because he felt it may be used as a weapon. (See Def. Reply Br. at Ex. A.)

Plaintiff filed a seven-count Complaint on September 15, 2004 alleging that these events amount to inadequate medical care.  Specifically, Plaintiff argues that an 11-day delay before seeing an orthopedic specialist caused the "permanent [l]exion [d]eformity" of his left middle finger.  (Pl. Compl. at ¶ 3.) Plaintiff has not artfully set forth his claims in his Complaint. However, it appears to this Court (and Defendant) that Plaintiff is pleading medical malpractice and violation of his civil rights under 42 U.S.C. § 1983.

## II. Discussion

This Court will address Defendant's arguments for why summary judgment[6] is appropriate in two parts.  First, this Court

---

[6] Defendant has filed a motion for summary judgment pursuant to Rule 56 of the Fed. R. Civ. P.  Under Rule 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citations omitted).  It is true that in deciding whether there exists a disputed issue of material fact, the Court must view the facts asserted by the non-moving party in the light most favorable to that party.  See Aman v. Cort Furniture Corp. 85 F.3d 1074, 1080-81 (3d Cir. 1996).  However, a non-moving party may not rest upon mere allegations, general denials, or vague

has determined that genuine issues of material fact exist as to Plaintiff's Section 1983 claim.  Accordingly, Defendant is not entitled to judgment as a matter of law with respect to Plaintiff's Section 1983 claim.

However, with regard to Plaintiff's claim of medical malpractice under New Jersey law, this Court finds that New Jersey's Affidavit of Merit Statute, N.J.S.A. 2A: 53A-27, requires a plaintiff to file an affidavit from an appropriately licensed person stating that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."  N.J.S.A. 2A:53A-27.  Failure to submit such an affidavit will result in dismissal of the complaint (due to the plaintiff's failure to state a cause of action).  N.J.S.A. 2A:53A-29.  Here, Plaintiff has failed to submit an affidavit of merit and no exception to the Affidavit of Merit Statute applies.  Accordingly, Plaintiff's claim of medical negligence under New Jersey law must be dismissed.

    A.   <u>A Procedural Matter Related to Plaintiff's § 1983 Claim</u>

Before addressing the merits of Defendant's arguments set forth in his moving papers, this Court must address a procedural

---

statements.  <u>Bixler v. Central Penn. Teamsters Health and Welfare Fund</u>, 12 F.3d 1292, 1302 (3d Cir. 1993).

issue related to Defendant's motion.  Defendant begins his motion for summary judgment as to Plaintiff's Section 1983 claim by citing the standard for a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  Not only is this standard inappropriate in light of the procedural posture of a summary judgment motion, Defendant cites a "heightened standard" for Section 1983 claims which is no longer good law.  Defendant asserts that in order to maintain a complaint under Section 1983, a plaintiff must include allegations of "the specific conduct violating the plaintiff's rights, the time and place of that conduct, and the identity of the responsible officers." (Def. Br. at 7 (citing Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988)).

Thirteen years ago, however, the United States Supreme Court reviewed the heightened specificity standard, attempting to reconcile it with the liberal notice pleading system set forth in Rules 8(a)(2) and 9(b), Fed. R. Civ. P.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, (1993); see also Moser v. Bascelli, 865 F. Supp. 249, 255 (E.D. Pa. 1994) aff'd, 70 F.3d 1256 (3d Cir. 1995).  In Leatherman, a unanimous Supreme Court held that because Rule 9(b) does not include Section 1983 cases among those for which specific pleading is required, the requirement that a Section 1983 claim meet the heightened pleading requirement could not be squared with the Federal Rules.  See Moser, 865 F. Supp. at 255

6

citing Leatherman, 507 U.S. at 168 ("We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by the Federal Rules.")  As a result, pleadings in Section 1983 cases are to be evaluated by the district court in accordance with the liberal standard enunciated in Rule 8(a), Fed. R. Civ. P.  See Moser, 865 F. Supp. at 255.

Regardless, as to Plaintiff's Section 1983 claim, Defendant has answered the Complaint and the Court has considered matters outside the pleading which have been presented.  Thus, Defendant's motion will be treated as one for summary judgment and disposed of as provided in Rule 56, Fed. R. Civ. P.  The heightened pleading standard referenced in Defendant's brief, which is no longer good law, is irrelevant to the disposition of a motion for summary judgment.

> B. Material Issues of Fact Exist Regarding Whether Defendant Was Not Deliberately Indifferent to Plaintiff's Medical Needs.

Plaintiff seeks recovery under 42 U.S.C. § 1983 for the alleged deprivation of his Eighth Amendment rights as a result of having to wait approximately eight days after seeing Defendant (February 13, 2002 to February 21, 2002) to see an orthopedist for his injured finger.  (Pl. Br. at 10.)  In order to successfully prove an Eighth Amendment violation, a prisoner must show that he was subjected to "cruel and unusual punishment."

U.S. Const. Amend. VIII. It is well-settled that those actions which are "incompatible with the evolving standards of decency" or impose "unnecessary and wanton infliction of pain" violate the amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (citations omitted); see <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 417 (3d Cir. 2000).

In <u>Estelle</u>, the Supreme Court interpreted this broad standard to mean that prison officials can be held liable for Eighth Amendment violations upon a showing of "deliberate indifference to serious medical needs of prisoners." <u>Id</u>. at 104. In sum, the Supreme Court concluded that "deliberate indifference" to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." <u>Id</u>. Thus, in order to succeed in this claim, Plaintiff must prove that Defendant operated with "deliberate indifference" to Plaintiff's serious medical condition. <u>Id</u>. at 106.

Furthermore, an inmate must prove that the prison official acted with deliberate indifference "to a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). Deliberate indifference will only be found where "the official knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u> at 837. Accordingly, deliberate indifference can be shown where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or

8

where short of absolute denial, necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).[7]

In Durmer, the plaintiff was a prisoner alleging that the prison doctor was deliberately indifferent for failing to treat plaintiff with physical therapy.  Durmer, 991 F.2d at 67.  Plaintiff asserted that the doctor's failure to provide appropriate therapy over the course of several months caused him to lose substantial use of his left leg.  See id.  The doctor argued that he was not deliberately indifferent, but that the delay in treatment stemmed from sending plaintiff to a number of specialists to be evaluated before starting treatment.  See id. at 68.  The Third Circuit Court of Appeals, citing Lanzaro,

---

[7] Prison authorities are allowed considerable latitude in the diagnosis and treatment of prisoners.  See Durmer, 991 F.2d at 67.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  United States ex rel. Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Only where a prison official has acted with deliberate indifference will those actions affront "evolving standards of decency."  Estelle, 429 U.S. at 106.  Indeed courts, have found deliberate indifference where a prisoner's medical needs were all but ignored.  See Andrews v. Camden County, 95 F. Supp. 2d 217 (D.N.J. 2000) (holding that there was an issue of material fact that prison officials were deliberately indifferent where prisoner repeatedly complained of an infected toothache and did not receive treatment).

9

reversed and remanded a district court's grant of summary judgment on the issue that there was no genuine issue of material fact that the doctor was not acting with deliberate indifference. See id. at 68-69, (citing Lanzaro, 834 F.2d at 346.)

Here, like Durner and Lanzaro certain material issues of fact prevent the grant of summary judgment. Under Lanzaro, the Third Circuit held that deliberate indifference could exist where "knowledge of the need for medical care" is accompanied by either (1) the "intentional refusal to provide that care" or where (2) "short of absolute denial...'necessary medical treatment is...delayed for non-medical reasons.'" Lanzaro, 834 F.2d at 346; see Durmer, 991 F.2d at 68. Here, as in Lanzaro and Durmer, the Court cannot say as a matter of law that Defendant's conduct was not deliberately indifferent. If the Court gives Plaintiff the benefit of all reasonable inferences and assumes that, Plaintiff did not receive adequate medical care - concluding that the eight-day delay between (1) the time Dr. Acosta examined Plaintiff and ordered an orthopedic consult and (2) the time Plaintiff was examined by an orthopedist caused Plaintiff's deformity[8] - the issue of Dr. Acosta's intent then becomes

---

[8] Dr. Acosta treated Plaintiff on February 13, 2002 and ordered an orthopedic consult. (Def.'s Br. at Ex. B and C.) Specifically, Dr. Acosta's notes indicate that Plaintiff was referred to Atlantic Shore Orthopedic Association. (Def.'s Br. at Ex. C.) Moreover, it is clear that the orthopedist, Dr. Marczyk, was unsuccessful at reducing Plaintiff's dislocated finger back into place. (Def.'s Reply Br. at Ex. A.)

critical. If the inadequate care was a result of a negligent error in medical judgment on the part of Acosta, Plaintiff's claim under the Eighth Amendment fails. See Durmer, 991 F.2d at 69. However, if the inadequate care was "deliberate" or "motivated by non-medical factors," then Plaintiff has a viable claim. Id.

Issues such as whether one's conduct is "deliberate" or "motivated by non-medical factors" are factual issues. A jury must hear Dr. Acosta's testimony in order to assess his credibility and determine these factual issues. Upon the present record then, giving the Plaintiff all favorable inferences, a reasonable factfinder could find that Acosta acted with deliberate indifference in allowing an eight-day delay between the time that he saw Plaintiff and the time he could be examined and treated by the orthopedist that Acosta referred Plaintiff to, and that the delay in treatment was a proximate cause of Plaintiff's deformity.[9]

---

[9] In his reply brief, Defendant argues that, in this Court's opinion of August 4, 2005, the Court "held that under the facts, Plaintiff's treatment was adequate and not disregarded by the prison officials [and] there was no actionable violation of the Eighth Amendment's cruel and unusual punishment claims as a matter of law." Crymes v. Atlantic County Goverment, No. 04-4450, slip op. at 8-11 (D.N.J. Aug. 4, 2005). Defendant argues that this "determination constitutes law of the case." (Def.'s Reply Br. at 1.) This Court's earlier opinion, however, addressed on the issue of whether the "prison officials" acted with deliberate indifference and did not address whether Dr. Acosta's action were appropriate. Indeed, the duties of the prison officials differ from those of a physician working under

      C.    <u>Plaintiff's Claims of Medical Negligence Must Be Dismissed Because Plaintiff Failed to Provide an Affidavit of Merit.</u>

New Jersey's Affidavit of Merit Statute (the "Act") requires that a plaintiff, in certain causes of action, make a threshold showing that his claim is meritorious. <u>See</u> <u>Cornblatt v. Barow</u>, 153 N.J. 218, 228 (1998) (enacted in 1995 in order "to bring common sense and equity to the state's civil litigation system.") The purpose of the Act, which applies to cases where the alleged malpractice or negligence occurred after June 29, 1995, was to allow the trial court to identify meritless claims at an early stage of litigation. <u>In re Petition of Hall</u>, 147 N.J. 379, 391 (1997).

The Act states in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of

---

contract for the prison as the prison officials' duties lay in ensuring that an injured prisoner is evaluated by a medical professions (which the officials did). <u>See</u> Crymes, No. 04-4450, slip op. at 11 ("It is clear that Plaintiff was examined by several licensed professionals...which demonstrates <u>the</u> <u>prison's</u> responsiveness to [Plaintiff's] medical conditions.")(emphasis added). There was no indication that the Defendant prison officials had any personal knowledge of Plaintiff's condition or treatment, and they could not be held to be indifferent where they provided for the availability of medical care. The medicine providers, on the other hand, are alleged to have had direct involvement and made the medical decisions of which Plaintiff now complains. Thus, Defendant may not extrapolate on this Court's earlier opinion directed at the moving parties in that motion for summary judgment in order to absolve Defendant of liability.

> the answer to the complaint by the defendant, **provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices**. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause._____

N.J.S.A. 2A:53A-27 (emphasis added). The Affidavit of Merit Act further states:

> If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to section 2 or 3 of this act, it shall be deemed a **failure to state a cause of action**.

N.J.S.A. 2A:53A-29 (emphasis added). The Act also applies in this Court to state common law claims for professional negligence. See Chamberlain v. Giampapa, 210 F.3d 154, 157 (3d Cir. 2000). A failure to provide this threshold showing "constitutes a failure to state a cause of action against the defendant." In re Petition of Hall, 147 N.J. at 390 (citing N.J.S.A. 2A:53A-29).[10]

It is clear from both Plaintiff's and Defendant's

---

[10] It is arguable that Defendant should have moved to dismiss this claim for failure to state a cause of action prior to the completion of discovery. However, nothing in the Act places an affirmative obligation on a defendant to file a motion to dismiss within a set time frame. See Knorr v. Smeal, 178 N.J. 169, 178 (2003) (granting a defendant's motion to dismiss in a medical malpractice suit for the plaintiff's failure to submit an affidavit of merit, despite the defendant having waited until after the completion of discovery to make the motion).

submissions that Plaintiff has failed to file an Affidavit of Merit as to his claim for medical negligence against Defendant. Plaintiff's claim is for medical negligence, specifically that an 11-day delay in treating his injured finger has caused irreparable physical damage.  Accordingly, he must obtain an affidavit of merit from a medical professional to demonstrate that his claim is meritorious. Because he has failed to do so, his claim cannot survive a motion to dismiss.[11]

However, Plaintiff argues that he meets an exception to the Act because Defendant's responses to discovery were late and therefore an affidavit of merit is not required.  The Act provides an affidavit shall not be required if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: (1) the defendant has failed to provide plaintiff with

---

[11] The Court notes that Plaintiff made a number of attempts to obtain the required Affidavit of Merit.  Plaintiff sent an undated letter to Gerald S. Packman, M.D., an orthopedist, requesting an Affidavit of Merit.  (Pl.'s Letter Br. [Docket Item No. 80]).  On May 19, 2005, Dr. Packman replied stating that, because he is a physician working under contract with the "State Prison System," he has been advised that he would have a conflict of interest and therefore is "not the appropriate person to provide an Affidavit of Merit."  (Id., Letter from Gerald Packman to Lamont Crymes, dated 5/9/2005.)  Also, at some point, Plaintiff contacted the New Jersey State Board of Nursing (the Board replied on July 11, 2005) and the New Jersey State Board of Medical Examiners Office (on June 27, 2005 and again on August 15, 2005.)  It is not entirely clear whether Plaintiff is seeking an Affidavit of Merit or attempting to air grievances to these organizations.  However, even if Plaintiff was attempting to obtain an Affidavit of Merit from these organizations, Plaintiff's efforts took place long after the 60-day window to get such an affidavit closed (as Dr. Acosta filed his Answer on December 16, 2004.)

medical records or other records or information having a substantial bearing on preparation of the affidavit; (2) a written request for the records has been made by certified mail or personal service; and (3) at least 45 days have elapsed since the defendant received the request.  See N.J.S.A. 2A:53A-28.

While Plaintiff has correctly stated an exception to compliance with the Act, Plaintiff is incorrect that the exception applies to the present circumstances.  The New Jersey Appellate Division has held that "a plaintiff is not relieved of the obligation to provide an affidavit of merit simply because a defendant has failed to respond to a document request within forty-five days."  Scaffidi v. Horvitz, 343 N.J. Super. 552, 558-59 (App. Div. 2001).  Indeed, the court held that in order to trigger the running of the forty-five day period for a response "N.J.S.A. 2A:53A-28 must be construed to require a plaintiff to identify with specificity any medical records or other information he believes are needed to prepare an affidavit of merit . . . ."  Id.

Here, nothing in the record shows Plaintiff ever identified with specificity any documents needed in discovery that would have any bearing on his procuring an affidavit of merit.  Nothing in either of Plaintiff's submissions demonstrate Plaintiff's attempt to acquire relevant medical records.  Additionally, Defendant was not personally in possession of any information

15

that would have bearing on Plaintiff's ability to procure an affidavit.  Indeed, Defendant did not have any recollection of Plaintiff and had to rely on Correctional Medical Care's records to answer the interrogatories.  (Pl. Br. at Ex. L.)  Nothing in the record evidences Plaintiff's attempt to acquire this paperwork from Correctional Medical Care.[12]  Further, even if Plaintiff met the exception to the Act, nothing in the record shows that he has provided any sworn statement in lieu of the affidavit as required by the Act.  N.J.S.A. 2A:53A-28.  Thus, in accordance with N.J.S.A. 2A:53A-29, Plaintiff's action must be dismissed for failure to state a cause of action.

### III. Conclusion

Because there are genuine issues of material fact as to Plaintiff's claim under 42 U.S.C. § 1983, Defendant's summary judgment motion will be denied as to this claim.  However, Plaintiff has failed to provide this Court with an affidavit of merit as required by N.J.S.A. 2A:53A-27 in all cases where a plaintiff claims medical malpractice.  Even if Plaintiff fell within the exception to this requirement, Plaintiff has not

---

[12] Plaintiff argues that because Defendant failed to advise him of his change in representation and Defendant's submissions did not reach the Plaintiff until early September, he should be granted an extension to file an affidavit or other sworn statement.  (Pl. Br. at 7.)  However, such an extension is unreasonable given that nearly three months have passed since Defendant filed this motion to dismiss and Plaintiff has failed to obtain an affidavit or submit a sworn statement.

16

provided this Court with a sworn statement in lieu of the required affidavit.  Accordingly, Plaintiff's claim of medical negligence must be dismissed for failure to state a cause of action.  The accompanying Order will be entered.


**March 30, 2006**               **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 United States District Judge