NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONT G. CRYMES, a/k/a MUZZAMMIL HAGG, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-4450 (JBS) |
| v. | **OPINION** |
| ATLANTIC COUNTY GOVERNMENT, et al., | |
| Defendants. | |

APPEARANCES:

Lamont G. Crymes, a/k/a/
Muzzammil Hagg
Riverfront State Prison
751428A
P.O. Box 9104
Camden, NJ 08101
    Plaintiff Pro Se

Eileen W. McGann, Esq.
Joseph K. Cooney, Esq.
1803 Highway 35
Oakhurst, NJ 07755
    Attorneys for Defendant Atlantic Shore Orthopedic
    Associates, LLC

Victor P. Wasilauskas III, Esq.
David J. Bishop, Esq.
CRAMMER, BISHOP & MARCZYK, P.C.
508 New Jersey Avenue, Suite B3
Absecon, NJ 08201
    Attorney for Defendant Dr. Stanley C. Marczyk, M.D.

**SIMANDLE,** District Judge:

Pro se plaintiff, Lamont G. Crymes (hereafter "Plaintiff") brought this cause of action under state law and 42 U.S.C. § 1983 for a violation of his right to receive medical care for a dislocated finger suffered while incarcerated in the Atlantic County Justice Facility.[1] Before the Court are two motions for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P., - one brought by defendant Stanley C. Marczyk, M.D. ("Dr. Marczyk") and the other brought by Dr. Marczyk's employer, Atlantic Shore Orthopedic Associates, LLC ("Atlantic Shore")[2] as to Plaintiff's claims of medical malpractice and negligence under New Jersey law and a violation of 42 U.S.C. § 1983.[3] For the purposes of efficiency, both Defendants' motions [Docket Item Nos. 81 and 82] will be addressed together in this Opinion. For the following reasons, both Dr. Marczyk and Atlantic Shore's motions for summary judgment will be granted.

---

[1] Plaintiff is currently incarcerated in Riverfront State Prison in Camden, New Jersey.

[2] Collectively, Dr. Marczyk and Atlantic Shore shall be referred to as the "Defendants."

[3] For purposes of the state law medical malpractice/ negligence claim, this motion would be more properly characterized as a Rule 12(b)(6) motion for failure to state a claim.

**I. BACKGROUND**

    **A.**    <u>Facts</u>

On February 10, 2003, Plaintiff Lamont G. Crymes injured his left middle finger playing basketball while incarcerated in the Atlantic County Justice Facility (hereafter "ACJF"). (Compl. at ¶ 3; Marczyk Br. at Ex. C.) On February 11, 2003 an x-ray revealed that his left third finger was dislocated.[4] (Marczyk's Statement of Undisputed Material Facts ¶ 5.)) On February 13, 2003, Plaintiff was examined by Dr. Ramon Acosta, M.D. who, after reviewing Plaintiff's medical records and the radiologic report, examined Plaintiff's finger and ordered an orthopedic consult. Plaintiff was advised to continue his prior treatment which included splinting, elevation, ice and Motrin.

On February 21, 2003, 11 days after the injury, Plaintiff was examined by Dr. Marczyk at Atlantic Shore's facility.[5] Plaintiff's complaints upon evaluation by Dr. Marczyk included swelling, constant pain and throbbing in his finger. (<u>Id</u>.) Dr.

---

[4] The facts related to Plaintiff's injuries and medical treatment prior to Dr. Marczyk's consultation are discussed in greater detail in this Court's earlier opinions in this matter. <u>See</u> <u>Crymes v. Atlantic County Gov't</u>, 04-4450, slip op. at 2-5 (D.N.J. Aug. 4, 2005)("<u>Crymes I</u>"); <u>Crymes v. Atlantic County Gov't</u>, 04-4450, slip op. at 2-4 (D.N.J. March 30, 2006).

[5] According to their statements of undisputed material facts, Defendants contend that both Dr. Marczyk and Atlantic Shore are "licensed persons" as defined by N.J.S.A. 2A:53A-26. (<u>See</u> Marczyk's Statement of Undisputed Material Facts ¶ 3; Atlantic Shore's Statement of Material Facts ¶ 4).

Marczyk diagnosed Plaintiff with a dislocated "PIP [proximal interphalangeal] joint" and "obvious deformity" in the left middle finger.  (Id.)  After administering pain medication, Dr. Marczyk performed a "manipulation and relocation" which, an x-ray revealed, resulted in "good position and relocation" of the finger.  (Id.)  Dr. Marczyk then placed Plaintiff's finger in a splint and advised Plaintiff not to remove the splint and to return in two weeks for evaluation.  (Id.)  On March 14, 2003, Plaintiff's finger was again x-rayed and Dr. Marczyk noted that Plaintiff's finger was "located."  (Id. ¶ 6.)  Dr. Marczyk taped Plaintiff's finger, prescribed daily exercises and ibuprofen, and advised Plaintiff to return in four weeks for further evaluation.  (Id.)  Dr. Marczyk did not see Plaintiff again.  (Id.)

### B.   Procedural History

Plaintiff initiated this action against a number of defendants, some of whom were previously granted summary judgment and dismissed from the case.[6]  Plaintiff has not artfully set forth his claims in his Complaint.  It appears to this Court that Plaintiff is pleading medical malpractice and violation of his

---

[6] On August 4, 2005, this Court granted the motion for summary judgment by defendants Atlantic County Government, Dennis Levinson, Atlantic County Board of Chosen Freeholders, Gary Merline, Atlantic County Justice Facility and Atlantic County Justice Facility Medical Department, and Prison Health Services, Inc. [See Docket Item Nos. 67 and 68.] However, on March 30, 2006, this Court denied in part the motion for summary judgment by defendant Dr. Roman Acosta, M.D. [See Docket Item Nos. 85 and 86.]

civil rights under 42 U.S.C. § 1983 on the part of Dr. Marczyk and medical malpractice on the part of Atlantic Shore under the doctrine of respondeat superior.[7]  (Id. at ¶ 1.)  Specifically, as to Dr. Marczyk, Plaintiff alleges that:

> [A]t the time of evaluation/treatment by [Dr. Marczyk] the Plaintiff's left [third] dislocated finger had started to heal in a critical [sic] deformed position, efforts were issued by [Dr. Marczyk] to reconstruct/re-position the left [third] finger of Plaintiff. Thereafter, Plaintiff's finger was placed in a finger brace in a downward position with the finger facing the ground direction.

(Compl. Count 7 ¶ 1.)  Such actions on the part of Dr. Marczyk, according to Plaintiff, constituted "physician neglect" and were caused by grave indifference to the welfare of Plaintiff" as a "careful review of the in-progress healing finger would have revealed the safe recourse for corrective treatment would have been surgical release."  (Id. at ¶ 2.)

The Complaint was filed on September 15, 2004. [Docket Item No. 1.]  Dr. Marczyk filed his answer on April 27, 2005 and Atlantic Shore answered on May 18, 2005.[8]  [Docket Item Nos. 49

---

[7] Plaintiff's Complaint alleges that Dr. Marczyk is an employee of Atlantic Shore.  In its answer, Dr. Marczyk states only that he is "associated with Atlantic Shore."  Neither Dr. Marczyk's or Atlantic Shore's statements of material facts reveal Dr. Marczyk's exact relationship with Atlantic Shore.  As such, viewing all facts in the light most favorable to Plaintiff, this Court will consider Dr. Marczyk to be an employee of Atlantic Shore.

[8] This delay was caused by problem Plaintiff encountered in serving the Defendants. [See Docket Item No. 44.]

5

and 54, respectively.]  Atlantic Shore and Dr. Marczyk then independently filed motions for summary judgment on and November 7, 2005 and December 4, 2005, respectively.  [Docket Item Nos. 81 and 82, respectively.]  Both Defendants argue that this Court should grant Defendants' motions because Plaintiff failed to provide either of them with an affidavit of merit in a timely manner.  Defendant Dr. Marczyk also argues that Plaintiff's § 1983 claims must be dismissed because Plaintiff cannot establish that Dr. Marczyk acted with "deliberate indifference" to Plaintiff's serious medical needs.  As of the date of this Opinion, Plaintiff has failed to file opposition to either Defendants' motions.

**II. DISCUSSION**

As indicated above, Defendants' motions for summary judgment are unopposed.  Under Local Civ. R. 7.1(d)(2), any opposition to Defendants' motions for summary judgment was due long ago - on December 2, 2005 with respect to Atlantic Shore's motion and December 23, 2005 with respect to Dr. Marczyk's motion.

    **A.**    <u>**Unopposed Summary Judgment Motion Standard of Review**</u>

On a motion for summary judgment, the court must determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Abraham v. Raso</u>, 183 F.3d 279, 287 (3d Cir. 1999) (citing Fed. R. Civ. P. 56(c)).  A party opposing summary judgment "must

do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the nonmoving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990) (quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if movants are entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(e); see Anchorage Assocs., 922 F.2d at 175.

**B.    Dr. Marczyk**

In his motion for summary judgment, Dr. Marczyk argues that Plaintiff's medical malpractice and negligence claims against him must be dismissed because: (1) Plaintiff failed to file an Affidavit of Merit as required by N.J.S.A. 2A:53A-27; and (2) Plaintiff failed to serve an expert report on Dr. Marczyk establishing his negligence.  Second, Dr. Marczyk argues that Plaintiff cannot establish that Dr. Marczyk acted with deliberate indifference to Plaintiff's medical condition and therefore, Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed.

7

**1.   Plaintiff's Medical Malpractice/Negligence Claims**

New Jersey law requires that a plaintiff who brings a certain type of action to make a threshold showing that his or her claim is meritorious before the claim may proceed. See Cornblatt v. Barow, 153 N.J. 218, 228 (1998)[9] Specifically, New Jersey's Affidavit of Merit Statute, N.J.S.A. 2A: 53A-27 (the "Act"), requires a plaintiff to file an affidavit from an appropriately licensed person stating that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27.[10]  The Act applies in this Court to state common law claims

---

[9] In Cornblatt, the New Jersey Supreme Court stated that the Legislature enacted the New Jersey Affidavit of Merit Statute in order "to bring common sense and equity to the state's civil litigation system." 153 N.J. at 228. The purpose of the Act, which applies to cases where the alleged malpractice or negligence occurred after June 29, 1995, was to allow the trial court to identify meritless claims at an early stage of litigation. See In re Petition of Hall, 147 N.J. 379, 391 (1997).

[10]   The Act states in relevant part:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or

for professional negligence including claims for medical malpractice (as a physician is deemed a "licensed person" under the Act.)  See Chamberlain v. Giampapa, 210 F.3d 154, 157 (3d Cir. 2000); N.J.S.A. 2A:53A-26(f).  The affidavit of merit must be filed within 60 days of the defendants filing his or her answer but, at its discretion, the court may grant a plaintiff up to an additional 60 days in which to file the affidavit.  See N.J.S.A. 2A:53A-27.  Failure to submit the affidavit will result in dismissal of the complaint (due to the plaintiff's failure to state a cause of action).[11]  See N.J.S.A. 2A:53A-29; see also In re Petition of Hall, 147 N.J. at 390 (citing N.J.S.A. 2A:53A-29).[12]

---

> knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27 (emphasis added)

[11] Specifically, the Affidavit of Merit Act states:

> If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to section 2 or 3 of this Act, it shall be deemed a failure to state a cause of action.

N.J.S.A. 2A:53A-29.

[12] It is arguable that Defendant Dr. Marczyk should have moved to dismiss this claim for failure to state a cause of action prior to the completion of discovery.  However, nothing in the Act places an affirmative obligation on a defendant to file a

It is clear from Dr. Marczyk's submissions that Plaintiff failed to file an Affidavit of Merit as to his claim for medical negligence against Dr. Marczyk within the mandatory time period. Indeed, it appears that, as of the date of this Opinion, Plaintiff has yet to file this affidavit. Plaintiff's claim is for medical negligence, specifically that a "careful review of the in-progress healing finger would have revealed the safe recourse for corrective treatment would have been surgical release" and such a careful review was not done. (Id. at ¶ 2.) Accordingly, Plaintiff was required to obtain an affidavit of merit from a medical professional to demonstrate that his claim is meritorious. Because Plaintiff has failed to do so, his claim cannot survive Dr. Marczyk's motion to dismiss.[13] Thus, in accordance with N.J.S.A. 2A:53A-29, Plaintiff's action for medical malpractice and negligence must be dismissed for failure to state a claim.

---

motion to dismiss within a set time frame. See Knorr v. Smeal, 178 N.J. 169, 178 (2003) (granting a defendant's motion to dismiss in a medical malpractice suit for the plaintiff's failure to submit an affidavit of merit, despite the defendant having waited until after the completion of discovery to make the motion).

[13] The Court notes that because Plaintiff filed no opposition, the Court cannot determine whether Plaintiff made any attempts to obtain the required affidavit of merit or whether Plaintiff qualifies for any exception to the Act.

### 2. Plaintiff's Eighth Amendment Claim

From his self-styled Complaint, it appears that Plaintiff seeks recovery under 42 U.S.C. § 1983 for the alleged deprivation of his Eighth Amendment rights stemming from what Plaintiff perceived as inadequate medical treatment on the part of Dr. Marczyk. (Compl. Count 7 ¶ 2.) Specifically, Plaintiff alleges that Dr. Marczyk's was negligent and indifferent to Plaintiff's welfare because a "careful review of the in-progress healing finger would have revealed the safe recourse for corrective treatment would have been surgical release." (Id.) Thus, to clarify Plaintiff's claims against Dr. Marczyk from those brought against certain other co-defendants (addressed in Crymes I and Crymes II), Plaintiff's claim is not that Dr. Marczyk deprived him of medical care, but that the medical treatment provided by Dr. Marczyk was inadequate.

In order to successfully prove an Eighth Amendment violation, a prisoner must show that he was subjected to "cruel and unusual punishment." U.S. Const. Amend. VIII. In the context of a § 1983 claim for the deprivation of medical treatment in violation of a prisoner's Eighth Amendment rights, a Plaintiff must show that a defendant acted with "deliberate indifference to the serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976)(A showing of "deliberate indifference" to the serious medical needs of a prisoner

11

constitutes the "unnecessary and wanton infliction of pain.") Moreover,

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-06.

The Third Circuit has elaborated on the holding of Estelle. Specifically, the Third Circuit has held that a mere difference of opinion between patient and doctor as to the course of treatment used to treat an ailment does not establish a violation under § 1983. See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir. 1976). Also, a plaintiff's subjective desire for additional or different treatment fails to establish a violation of his Eighth Amendment rights. See Stackhouse v. Marks, 556 F. Supp. 270, 272 (M.D. Pa. 1982), aff'd, 707 F. 2d 1404 (3d Cir. 1983). Indeed, the Third Circuit has made clear that prison authorities are allowed

considerable latitude in the diagnosis and treatment of prisoners and that the courts should tread lightly when reviewing medical judgments made by prison health care providers.  See Durmer v. O'Carrol, 991 F.2d 64, 67 (3d Cir. 1993); United States ex rel. Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")

Accepting as true all material facts set forth by Dr. Marczyk's motion, (see Marczyk Br. at Ex. C.), this Court finds that summary judgment is appropriate on the Eighth Amendment issue.  Plaintiff's Complaint is devoid of specific allegations regarding Dr. Marczyk's actions and exactly what he did wrong that caused Plaintiff harm (other than the vague allegation that Dr. Marczyk's negligence caused permanent deformity to Plaintiff's finger).  Because Plaintiff's Complaint fails to refer to specific acts or omissions by Dr. Marczyk, Plaintiff does not state a cognizable claim of an Eighth Amendment violation under the standards set forth in Estelle.  See 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.")  Moreover, to the extent that the allegations in the Complaint arise out of

13

Plaintiff's desire for different or better medical attention than what he received, no constitutional violation occurred as the Supreme Court has made clear that, as here, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id.

Plaintiff's condition was evaluated by Dr. Marczyk on two separate occasions - on February 21, 2003 and March 14, 2003. (Statement of Undisputed Material Facts (Marczyk) ¶¶ 5-6.) Based on the findings of his initial examinations and x-rays, Dr. Marczyk treated Plaintiff as he saw fit - by first providing Plaintiff with pain medication, manipulating the finger until it was relocated and setting Plaintiff's finger in a splint and later evaluating the finger, taping it and prescribing pain medication. (Id.) Based on these undisputed facts, this Court finds that no reasonable jury could find that Dr. Marczyk was deliberately indifferent to Plaintiff's serious medical needs. Dr. Marczyk has met his burden of showing that no genuine issue of material fact exists to be decided, and therefore this Court must grant his motion for summary judgment motion as a matter of law.

### C. **Atlantic Shore Orthopedic Associates, LLC**

Plaintiff's Complaint alleges that Atlantic Shore is liable, under the doctrine of respondeat superior, for Dr. Marczyk's medical malpractice in failing to properly treat Plaintiff's

finger.  (Compl. Count 7, ¶ 1.)  In its motion, Atlantic Shore argues that, under New Jersey law, because Atlantic Shore is comprised of "licensed persons" within the meaning of the Affidavit of Merit Statute, Plaintiff was required to serve on it an affidavit of merit.  (Atlantic Shore's Br. at 3-4.)  According to Atlantic Shore, Plaintiff's failure to provide it with an affidavit of merit requires this Court to dismiss Plaintiff's Complaint because Plaintiff has failed to state a cause of action against Atlantic Shore.  (Id. at 4.)

In support of its proposition, Atlantic Shore cites Martin v. Perinni Corp., 37 F. Supp. 2d 362, 365-66 (D.N.J. 1999).  In Martin, the two defendants were an architect and an architectural firm.[14]  Id. at 364-65.  The court addressed the issue of whether an architectural firm organized under New Jersey's Professional Service Corporation Act was a "licensed person" for purposes of the Affidavit of Merit Act, holding that "a business organization whose leadership is composed of 'licensed persons' within the meaning of N.J.S.A. 2A:53A-26 is also considered a 'licensed person' for purposes of the Affidavit of Merit Statute."  Id. at 365.  The court reasoned that such a result was consistent with the purpose of the Act - namely that the statute was designed to require plaintiffs to make a threshold showing that their claims

---

[14]  N.J.S.A. 2A:53A-26 states that an architect is a "licensed person" within the meaning of the Affidavit of Merit Act.

15

have merit.  <u>Id</u>.  The holding in <u>Martin</u> has been followed by at least one other court in the District of New Jersey.  <u>See</u> <u>Bonnieview Homeowners Assoc. LLC v. Woodmont Builders, LLC</u>, 2005 U.S. Dist. LEXIS 23566, at *11-12 (D.N.J. October 6, 2005)(plaintiff must provide a defendant-affidavit of merit to an engineering firm as well as the individual defendant-engineers).

Following the rule in <u>Martin</u> and <u>Bonnieview</u>, this Court holds that, under the Act, Plaintiff was required to provide an affidavit of merit to Atlantic Shore, a medical group where Dr. Marczyk is employed.  Here, Atlantic Shore represents that it is "comprised of 'licensed persons' within the meaning of the [Act]."  (Atlantic Shore's Br. at 4.)  Because Plaintiff failed to file opposition to Atlantic Shore's motion for summary judgment, this fact is undisputed and as such, constitutes a "licensed person" for purposes of the Act under <u>Martin</u>.  Because Plaintiff was required but failed to serve an affidavit of merit on Atlantic Shore, this Court will grant Atlantic Shore's motion to dismiss Plaintiff's medical malpractice claims asserted against it.

### III. CONCLUSION

For the reasons stated herein, the Court grants both Dr. Marczyk and Atlantic Shore's motions for summary judgment and Plaintiff's Complaint will be dismissed as to these Defendants. Plaintiff's claim of medical malpractice against Dr. Marczyk and

16

Atlantic Shore must be dismissed because Plaintiff failed to provide this Court with an affidavit of merit regarding either of the Defendants as required by N.J.S.A. 2A:53A-27 in all cases where a plaintiff claims medical malpractice.  Even if Plaintiff fell within the exception to this requirement, Plaintiff has not provided this Court with a sworn statement in lieu of the required affidavit.  Moreover, Plaintiff's claim under 42 U.S.C. § 1983 against Dr. Marczyk for failure to properly treat Plaintiff's dislocated finger must also be dismissed because, based on the undisputed facts contained in Dr. Marczyk's Statement of Undisputed Material Fact, no reasonable jury could find that Dr. Marczyk acted with "deliberate indifference" in his treatment of Plaintiff.  The accompanying Order will be entered.


**June 2, 2006**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              United States District Judge