<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONT G. CRYMES, a/k/a MUZZAMIL HAGG,<br><br>           Plaintiff,<br><br>     v.<br><br>ATLANTIC COUNTY GOVERNMENT, <u>et al.</u>,<br><br>           Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 04-4450 (JBS)<br><br>**OPINION** |

APPEARANCES:

Lamont G. Crymes, a/k/a/
Muzzammil Hagg
Riverfront State Prison
751428A
P.O. Box 9104
Camden, NJ 08101
     Plaintiff <u>Pro</u> <u>Se</u>

John A. Talvacchia, Esq.
STAHL & DELAURENTIS, P.C.
1103 Laurel Oak Road
Suite 103
Voorhees, NJ 08043
     Attorney for Defendant Ramon Acosta

**SIMANDLE**, District Judge:

    Pro se plaintiff, Lamont G. Crymes (hereafter "Plaintiff") brought this cause of action under state law and 42 U.S.C. § 1983 for a violation of his right to receive medical care for a dislocated finger suffered while incarcerated in the Atlantic County Justice Facility.  Before the Court is a motion for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P., brought

by Defendant Dr. Ramon Acosta, M.D. (hereafter "Dr. Acosta") as to Plaintiff's claims under § 1983.  This is Dr. Acosta's second motion for summary judgement; this Court granted in part and denied in part Dr. Acosta's first motion for summary judgment in an Opinion and Order on March 30, 2006 (the "March Opinion and Order.")  For the following reasons, Dr. Acosta's motion for summary judgment will be granted.

I.   **BACKGROUND**

   A.   **Facts**

Because the parties to this case are familiar with its underlying facts, the Court will include only a brief summary of the relevant facts.  On February 10, 2003, Plaintiff Lamont Crymes injured his left third finger playing basketball while incarcerated in the Atlantic County Justice Facility (the "ACJF").  Plaintiff was escorted to the ACJF's medical department where a nurse examined Plaintiff's finger and advised him that he would not be sent to a hospital that day.[1]  On February 11, an x-ray revealed that his left third finger was dislocated.  Three days after the injury, on February 13, 2006, Plaintiff was examined by Dr. Acosta, a family practice physician who contracted with Correctional Medical Care, Inc., to provide medical services at the ACJF.  After reviewing the records and

---

[1] There is nothing in the record to indicate why Plaintiff was not sent to a hospital that night.

2

radiologic report, Dr. Acosta examined Plaintiff's finger and ordered an orthopedic consult.  Dr. Acosta advised Plaintiff to continue his prior treatment, which included splinting, elevation, ice and Motrin, and submitted the necessary paperwork (a Utilization Review Request for Outpatient Referral) for Plaintiff to be seen by an orthopedist.  The ACJF approved the request for orthopedic consultation on February 14, 2003, and made an appointment for the following week with Dr. Stanley C. Marczyk of Atlantic Shore Orthopedic Association.  On February 21, 2003, eleven days after the injury and eight days after Dr. Acosta's consultation, Dr. Marczyk examined Plaintiff and tried unsuccessfully to reduce his dislocated finger.

**B.   Procedural History**

Plaintiff filed a seven-count complaint (the "Complaint") on September 15, 2004, alleging that these events amount to inadequate medical care and that the 11-day delay before seeing an orthopedic specialist caused the "permanent [l]exion [d]eformity" of his left middle finger.  (Compl. at ¶ 3.)  Plaintiff's Complaint is not artfully drafted but it is clear that his claims amounted to (1) a claim of medical malpractice and (2) a claim for violation of his civil rights under § 1983 against Dr. Acosta.  In the March Opinion and Order, this Court dismissed Plaintiff's claim for medical malpractice, finding that Plaintiff had failed to provide the Court with an affidavit of

merit as required by N.J.S.A. § 2A:53A-29.  See Crymes v. Atlantic County Gov't, No. 04-4450, 2006 U.S. Dist. LEXIS 14293 at *15-16 (D.N.J. March 30, 2006).  The Court, however, denied Dr. Acosta's motion for summary judgment with respect to Plaintiff's § 1983 claim, finding that genuine issues of material fact existed regarding this claim.  Id. at *14.  Specifically, the Court stated that if the Court "conclude[d] that the eight-day delay between (1) the time Dr. Acosta examined Plaintiff and ordered an orthopedic consult and (2) the time Plaintiff was examined by an orthopedist caused Plaintiff's deformity," the issue of Dr. Acosta's intent would become critical.  Id. at *13.  The Court continued, holding that:

> Issues such as whether one's conduct is "deliberate" or "motivated by non-medical factors" are factual issues. A jury must hear Dr. Acosta's testimony in order to assess his credibility and determine these factual issues. Upon the present record then, giving the Plaintiff all favorable inferences, a reasonable factfinder could find that Acosta acted with deliberate indifference in allowing an eight-day delay between the time that he saw Plaintiff and the time he could be examined and treated by the orthopedist that Acosta referred Plaintiff to, and that the delay in treatment was a proximate cause of Plaintiff's deformity.

Id. at *14.

On May 23, 2006, Dr. Acosta filed a second motion for summary judgment[2] arguing that, in light of Plaintiff's failure

---

[2] Under Fed. R. Civ. P. 56, Dr. Acosta is permitted to make a second motion for summary judgment, particularly when new evidence has come to light based on this Court's previous partial denial of summary judgment.

4

to respond to Defendants's Request for Admissions, no issue of material fact exists regarding whether Dr. Acosta deliberately withheld care or delayed care for nonmedical reasons. (Def.'s Br. at 5.) Plaintiff never filed formal opposition to Dr. Acosta's second motion.[3] In a Letter Order in response to correspondence from Plaintiff, this Court enlarged the time for Plaintiff to respond to Defendant's Request for Admissions until August 7, 2006. [Docket Item No. 97.]

On August 2, 2006, Plaintiff answered Defendant's Request for Admissions in compliance with the Court's Letter Order. (Plaintiff's Response to Defendant's Request for Admissions.) [Docket Item No. 101.] In response to a request that Plaintiff admit that Dr. Acosta requested that the ACJF staff obtain an orthopedic consult, Plaintiff admitted that Dr. Acosta "sought approval for emergent treatment he knew was directly and immediately needed...." (Id. ¶ 2.) Plaintiff later contradicted this admission, stating that Dr. Acosta acted "with deliberate

---

[3] Plaintiff merely sent a letter to the Court (1) displaying displeasure with the fact that the Court allowed Dr. Acosta to file a second motion for summary judgment and (2) taking issue with the fact that Dr. Acosta incorrectly captioned his Requests for Admission. Subsequent to Dr. Acosta filing this motion, a second defendant, Correctional Medical Care, Inc., ("CMC") filed a motion for summary judgment. In a July 6, 2006 letter to the Court, Dr. Acosta requested that the Court consider CMC's motion as further support for Dr. Acosta's earlier motion for summary judgment. On July 25, 2006, Plaintiff filed opposition to CMC's motion but did not address the arguments raised in Dr. Acosta's second motion for summary judgment. Moreover, this Opinion does not decide CMC's motion.

indifference . . . elected[,] with his own, personal choice, to delay sending [P]laintiff to an outside hospital capable or fulfilling a needed recommended orthopedic treatment that [Dr. Acosta] could not provide." (Id. at 7.)

### C. Expert Report of Dr. Christopher A. Haines, M.D.

While Plaintiff was responding to Defendant's Request for Admissions, Dr. Acosta's counsel served on Plaintiff a copy of an expert report (dated July 4, 2006) authored by Dr. Christopher A. Haines, M.D. (Def.'s Reply Letter Br. at Ex. C.) Specifically, Dr. Haines evaluated the care that Defendant provided to Plaintiff on February 13, 2003 on behalf of Dr. Acosta. In preparing the report, Dr. Haines reviewed: (1) discovery responses from Plaintiff; (2) medical records of Dr. Acosta, Correctional Medical Facility and Prison Health Services and records from the ACJF's central reception and assignment facility; and (3) Dr. Acosta's answers to interrogatories. Dr. Haines further indicated that, for the purposes of performing his evaluation, he "held Dr. Acosta to the same standards applied to health care providers who care for non-incarcerated persons." (Id. at 1.)

In short, Dr. Haines concluded that, by the time Dr. Acosta first saw Plaintiff (which was three days after he had dislocated his PIP joint), "the advantage of immediate reduction was essentially lost." (Id. at 3.) Dr. Haines continued, stating:

6

> I know of no evidence-based literature that suggest that reduction performed three days after injury provides better results than reduction performed 10 days or more . . . after injury. Thus, since the advantage of early reduction was lost, it was completely reasonable for Dr. Acosta to choose to refer Mr. Crymes to an expert in orthopedics rather than to attempt the reduction himself.

(Id.) Finally, Dr. Haines concluded that "Dr. Acosta provided appropriate care to Mr. Crymes on the one occasion" that Dr. Acosta evaluated Plaintiff and that "Dr. Acosta provided care to Mr. Crymes that was consistent with the standard of care expected of a primary care physician." (Id.)

Plaintiff admits that he received Dr. Haines' report on July 28, 2006. In a reply to this Court's July 24, 2006 Letter Order, Plaintiff wrote that "[I]n light of [the fact that Dr. Haines has issued an expert report], [P]laintiff as well shall utilize, herein, Dr. Haines['] report as far as the specifics [P]laintiff [sic] evidence herein." (Pl.'s Letter to the Court, dated 7/31/06.) [Docket Item No. 100.] Furthermore, in a letter to all counsel, Plaintiff informed counsel that he "too shall utilized [sic] Dr. Haines' 'expert medical report'. . . ." (Letter from L. Crymes, dated 8/2/06, Def.'s Reply Letter Br. at Ex. B.) In his reply, Dr. Acosta argues that Plaintiff has adopted the views expressed in Dr. Haines' report. (Id. at 1.)

**II. DISCUSSION**

    **A.    Summary Judgment Standard of Review**

Dr. Acosta moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P. A court may grant summary judgment when the

7

materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.[4]

### B. Section 1983 Analysis

Plaintiff's claim under 42 U.S.C. § 1983 for alleged deprivation of his Eighth Amendment rights rests on whether he can prove that he was subjected to "cruel and unusual punishment." U.S. Const. Amend. VIII. It is well-settled that those actions which impose "unnecessary and wanton infliction of pain" violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102-04 (1976) (citations omitted)(holding that prison officials can be liable for Eighth Amendment violations upon a

---

[4] Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50.

8

showing that officials exhibited "deliberate indifference to serious medical needs of prisoners.")  The standard enunciated in Estelle is two-pronged: "it requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious."  West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837.  Accordingly, deliberate indifference can be shown where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial, necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).

Dr. Acosta makes two arguments in support of his motion for summary judgment.  First, Dr. Acosta argues that, in his responses to Defendant's Request for Admissions, Plaintiff did not address the issue of whether, when Dr. Acosta saw Plaintiff, Plaintiff's condition required Dr. Acosta ensure that Plaintiff was seen immediately by an orthopedist.  Dr. Acosta argues that, without this evidence, Plaintiff cannot prove a prima facie case that Dr. Acosta deliberately withheld or delayed necessary care. Second, Dr. Acosta argues that, by indicating in a letter to all

9

counsel and the Court that he will rely on Dr. Haines' expert medical report, Plaintiff has adopted Haines' report. Because the report confirms that Dr. Acosta's actions (1) did not deviate from the standard of care and (2) were not the proximate cause of Plaintiff's injuries, Plaintiff cannot prove Dr. Acosta was deliberately indifferent.

This Court agrees that by relying on Dr. Haines' report, Plaintiff concedes that Dr. Acosta did not act with deliberate indifference. In his July 31, 2006 letter to the Court in opposition to a co-defendant's motion for summary judgment, Plaintiff indicated that he will utilize Dr. Haines' report. [Docket Item No. 100.] In his August 2, 2006 letter to all counsel, Plaintiff again indicated that he "shall utilize Dr. Haines' 'expert medical report'" at trial. (Def.'s Reply Letter Br. at Ex. B.) In doing so, Plaintiff essentially adopted Dr. Haines' findings and tacitly agreed that there is no genuine issue of material fact regarding whether Dr. Acosta acted with deliberate indifference in allowing an eight-day delay before the orthopedic consult or that this delay in treatment was the proximate cause of the deformity to Plaintiff's finger.[5] This

---

[5] At minimum, Plaintiff's indication that he will utilize Dr. Haines' report coupled with his failure to submit his own expert's report or any evidence rebutting the conclusions of Dr. Haines, demonstrates Plaintiff's failure to set forth specific facts -- by way of affidavit, depositions, etc. -- that show that there is a genuine issue for the trier of fact. See Estate of Smith v. Marasco, 318 F.3d 497, 513-14 (3d Cir. 2003)(non-moving party cannot rely on possibility that reasonable jury might

Court's March 30, 2006 Opinion and Order indicated first that summary judgment was inappropriate because a reasonable factfinder could conclude that the eight-day delay in treatment was a proximate cause of Plaintiff's deformity.  Crymes, 2006 U.S. Dist. LEXIS 14293 at *14.  By adopting Dr. Haines' expert report - which concluded (1) that by the time Dr. Acosta examined Plaintiff (three days after the accident) "the advantage of immediate reduction was essentially lost" and (2) that there is no medical literature suggesting that reduction performed three days after injury provides better results than reduction performed 10 days or more post-injury - Plaintiff admits that the eight-day delay in treatment was not the proximate cause of his deformity.  (Def.'s Reply Letter Br. at Ex. C.)  As such, in adopting Dr. Haines' report (or in failing to rebut it with evidence), Plaintiff concedes that there is no genuine issue of material fact regarding Dr. Acosta's conduct and the proximate cause of his finger deformity.  Plaintiff's theory, in reliance on Dr. Haines' report, is that the deformity was caused by the failure to reduce the dislocation immediately after its occurrence, and that the damage was already done by the third day, when Dr. Acosta first saw him.

---

discredit moving party's account but, rather, must present affirmative evidence); Maguire v. Hughes Aircraft Corp., 912 F.2d 67, 72 (3d Cir. 1990)(nonmoving party may not rest upon mere allegations).

11

Moreover, by adopting Dr. Haines' report, Plaintiff also admits that there is no genuine issue of material fact regarding whether Dr. Acosta acted with deliberate indifference to Plaintiff's medical needs. In his report, Dr. Haines concluded that "Dr. Acosta provided appropriate care to Mr. Crymes" that was "consistent with the standard of care expected from a primary care physician." (Id.) An agreement with the statement that Dr. Acosta provided appropriate care that was consistent with this standard of care is inconsistent with a conclusion that Dr. Acosta was deliberately indifferent to Plaintiff's medical needs. As such, no genuine issue of material fact exists regarding whether Dr. Acosta was deliberately indifferent in allowing an eight-day delay between examining Plaintiff and the time Plaintiff was examined and treated by an orthopedist.

### III. CONCLUSION

Because there are no genuine issues of material fact as to Plaintiff's claim under 42 U.S.C. § 1983, Dr. Acosta's summary judgment motion will be granted. The accompanying Order will be entered.

**October 13, 2006**  s/ Jerome B. Simandle
Date                   JEROME B. SIMANDLE
                       United States District Judge