NOT FOR PUBLICATION

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LAMONT G. CRYMES, a/k/a MUZZAMIL HAGG,<br><br>            Plaintiff,<br><br>     v.<br><br>ATLANTIC COUNTY GOVERNMENT, et al.,<br><br>            Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 04-4450 (JBS)<br><br>**OPINION** |

APPEARANCES:

Lamont G. Crymes, a/k/a/
Muzzammil Hagg
Riverfront State Prison
751428A
P.O. Box 9104
Camden, NJ 08101
     Plaintiff Pro Se

Roger C. Steedle, Esq.
LAW OFFICES OF ROGER C. STEEDLE, P.A.
132 New Jersey Avenue
Absecon, NJ 08201-0900
     Attorney for Defendant Correctional Medical Care, Inc.

**SIMANDLE**, District Judge:

     Pro se plaintiff, Lamont G. Crymes (hereafter "Plaintiff") brought this cause of action under state law and 42 U.S.C. § 1983 for a violation of his right to receive medical care for a dislocated finger suffered while incarcerated in the Atlantic

County Justice Facility.[1]  Before the Court is a motion to dismiss under Rule 12(b)(6) and/or for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P., brought by Defendant Correctional Medical Care, Inc. (hereafter "Defendant") as to Plaintiff's claims of medical negligence under New Jersey law and 42 U.S.C. § 1983.[2]  For the following reasons, Defendant's motion for summary judgment will be granted.

I.  **BACKGROUND**

    A.  **Facts**

Defendant Correctional Medical Care, Inc. is a company that has a contract with Atlantic County Justice Facility (hereafter "ACJF") to provide (1) licensed physicians and nurses for specified medical care and (2) an administrative staff to operate the ACJF's medical unit.  According to the Request for Proposal: Health Care Service for the ACJF, Defendant is responsible for providing medical screening, mental health services, treatment plans, medical care as well as a host of other medical services within the ACJF's medical unit.

---

[1] Plaintiff is currently incarcerated in Riverfront State Prison in Camden, New Jersey.

[2] In his opposition papers, Plaintiff includes a Statement of Undisputed Material Fact.  In the statement, Plaintiff states that "CMC is not being sued for medical malpractice . . . ."  The Court interprets this phrase as a concession regarding Plaintiff's medical malpractice claim against Defendant.  As such, the Court will consider Plaintiff's medical malpractice claim to be voluntarily dismissed.

2

On February 10, 2003, Plaintiff Lamont Crymes injured his left middle finger playing basketball while incarcerated in the ACJF.  (Compl. at ¶ 3; Def. Br. at Ex. D.)  Plaintiff was escorted to the ACJF's medical department where a nurse (an employee of Defendant) examined Plaintiff's finger and advised him that he would not be sent to a hospital that day.  (Def.'s Br. at Ex. C(3))  The nurse taped Plaintiff's middle and next finger together, provided him with a pain-killer, and advised Plaintiff to ice and elevate his finger.  (Id.)  On February 11, Plaintiff's fingers were x-rayed.  (Radiological report of Dr. James E. Kovacs, M.D.; Def.'s Br. at Ex. A.)  That same day, the x-rays were reviewed by Dr. James Kovacs, M.D. who concluded that Plaintiff's left third finger was dislocated.  (Id.)

Plaintiff was then examined by Defendant, Dr. Ramon Acosta, M.D., on February 13, 2003.  (Pl. Br. at Ex. B.)  Dr. Ramon Acosta is a family practice physician who contracted with Defendant to provide medical services at Atlantic County Justice Complex.  After reviewing the records and radiologic report, Dr. Acosta examined Plaintiff's finger, ordered an orthopedic consult so the finger could be evaluated by a specialist and advised Plaintiff to continue his prior treatment which included splinting, elevation, ice and Motrin.  (Acosta's Answers to Interrogatories ¶ 9-10.)  (Id.)  Dr. Acosta also submitted the necessary paperwork (a Utilization Review Request for Outpatient

3

Referral) for Plaintiff to be seen by an orthopedist.  (Def.'s Br. at Ex. C(2).)

The ACJF approved the request for orthopedic consultation on February 14, 2003, and on that day a clerk from ACJF's medical unit (and an employee of Defendant) made an appointment with Atlantic Shore Orthopedic Association for the following week. (Id. at C(1).)  On February 21, 2003, 11 days after the injury and eight days after Plaintiff was examined by Dr. Acosta, Plaintiff was examined by co-defendant Dr. Stanley C. Marczyk at the Atlantic Shore Orthopedic Association.  Dr. Marczyk tried unsuccessfully to push Plaintiff's dislocated finger back into place and ultimately put a splint on Plaintiff's hand.

**B.     Procedural History**

On September 15, 2004, Plaintiff filed a seven-count Complaint alleging that these events amount to inadequate medical care.  Specifically, Plaintiff argues that an 11-day delay from the time of Plaintiff's injury to the time he was examined by an orthopedic specialist caused the "permanent [l]exion [d]eformity" of his left middle finger.  (Compl. at ¶ 3.)  Plaintiff has not artfully set forth his claims in his Complaint. However, it appears to this Court (and Defendant) that Plaintiff is pleading medical malpractice and violation of his civil rights under 42 U.S.C. § 1983.

4

Many of the defendants in this case have moved to dismiss or, in the alternative, for summary judgment and this Court has addressed these motions.  First, on August 4, 2005, the Court granted summary judgment in favor of Atlantic County Government, the Atlantic County Justice Facility and other related persons and prison officials, holding that, with respect to Plaintiff's Eighth Amendment violations, (1) Plaintiff's medical attention was adequate and (2) "even if the medical personnel were mistaken in their perception of the seriousness of Plaintiff's dislocation, such circumstances speak, at most, of negligence and not of deliberate indifference."  Crymes v. Atlantic County Gov't, 2005 U.S. Dist. LEXIS 16602, at *15 (D.N.J. Aug. 4, 2005).  Moreover, the Court held that "such circumstances, even if proven, do not rise to the level of an actionable violation of the Eighth Amendment's cruel and unusual punishment clause."  (Id.)

Second, on March 30, 2006, this Court denied the motion for summary judgment of Dr. Roman Acosta, M.D., holding that a genuine issue of material fact exists regarding whether the eight-day delay between the time Dr. Acosta examined Plaintiff and Plaintiff was seen by an orthopedist caused Plaintiff's injury and was deliberate or motivated by non-medical factors.  See Crymes v. Atlantic County Gov't, 2006 U.S. Dist. LEXIS 14293 at *10-11 (D.N.J. Mar. 30, 2006).  Dr. Acosta moved a second time

for summary judgment in which he presented expert testimony (and Plaintiff adopted Dr. Acosta's expert's testimony) concluding that (1) by the time Dr. Acosta examined Plaintiff (three days after the accident) "the advantage of immediate reduction was essentially lost" and (2) that there is no medical literature suggesting that reduction performed three days post-injury provides better results that reduction performed 10 days or more post-injury.  Crymes v. Atlantic County Gov't, 2006 U.S. Dist. LEXIS 77232 at *9-11 (D.N.J. Oct. 13, 2006).  On the basis of this undisputed expert report, this Court then granted Dr. Acosta's motion for summary judgment.[3]  Id.

Now, Defendant Correctional Medical Care, Inc. moves for summary judgment. [Docket Item No. 94.]  Plaintiff has opposed Defendant's motion [Docket Item No. 96]  and Defendant has filed a timely reply [Docket Item No. 98.]  More recently, Defendant has filed a supplemental reply letter brief dated December 22, 2006.  [Docket Item No. 106.]  In Defendant's December 22, 2006 submission, Defendant includes the expert report of Dr. Christopher Haines, M.D. which centers on the timing and protocol followed by Defendant's nursing and administrative staff during the time period spanning February 10, 2003 through February 14, 2003.  (Def.'s Suppl. Br. of 12/22/2006, Report of Dr.

---

[3] On June 2, 2006, this Court also granted the motions for summary judgment of Atlantic Shore Orthopedic Association and orthopedist Dr. Stanley C. Marczyk.

Christopher Haines, M.D. (the "Haines Report")).  Of note in Dr. Haines' report was his conclusion that

> Presuming Mr. Crymes' narrative to be true, the staff of the CMC certainly provided appropriate care on February 10, 2003.  Mr. Crymes reports that upon first evaluating Mr. Crymes, the nurses immediately notified Dr. Acosta, the physician.  Mr. Crymes reports that Dr. Acosta ordered the nurses to order an x-ray of the hand and to schedule an appointment with Dr. Acosta.  The staff at CMC did precisely that.

(Haines Report at 2.)  Moreover, the Haines Report concludes that "Mr. Crymes' injury was not caused by any action or inaction on the part of CMC."  (Id. at 3.)

After Defendant's reply, Plaintiff wrote to the Court expressing further opposition to Defendant's motion, the most recent submission dated January 9, 2007.  Defendant responded to Plaintiff's January 9, 2007 letter with a January 12, 2007 letter. [Docket Item No. 112.]  The Court considered all of the parties' submissions.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

7

law."[4]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court - that

---

[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.

there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

### III. **DISCUSSION**

In his reply papers, Plaintiff concedes that Defendant's actions do not constitute medical malpractice. (Pl.'s Statement of Undisputed Material Facts ¶ 5.)  Specifically, in Plaintiff's Statement of Undisputed Material Facts, Plaintiff states that "CMC is not being sued for medical malpractice as CMC per se is not a licensed practicing physician or nurse . . . ." (Id.)  As such, the sole remaining issue in the motion for summary judgment before this Court is whether a genuine issues of material fact exist regarding Defendant's actions and whether they rise to the level of a violation of Plaintiff's Eighth Amendment rights.

9

### A. <u>Standard for Eighth Amendment Violation</u>

Plaintiff seeks recovery under 42 U.S.C. § 1983 for the alleged deprivation of his Eighth Amendment rights as a result of what he deems as faulty medical care provided by employees of Defendant related to his injured finger. (Pl. Opp. Br. at 3-4.) In order to successfully prove an Eighth Amendment violation, a prisoner must show that he was subjected to "cruel and unusual punishment." U.S. Const. Amend. VIII. It is well-settled that those actions which are "incompatible with the evolving standards of decency" or impose "unnecessary and wanton infliction of pain" violate the amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (citations omitted); <u>see</u> <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 417 (3d Cir. 2000).

In <u>Estelle</u>, the Supreme Court interpreted this broad standard to mean that prison officials can be held liable for Eighth Amendment violations upon a showing of "deliberate indifference to serious medical needs of prisoners." <u>Id.</u> at 104. The Supreme Court concluded that "deliberate indifference" to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." <u>Id.</u> Thus, a plaintiff must prove that the defendant operated with "deliberate indifference" to the plaintiff's serious medical condition. <u>Id.</u> at 106.

The second requirement is that an inmate must prove that the prison official acted with deliberate indifference "to a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S.

825, 828 (1994). Deliberate indifference will only be found where "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Accordingly, deliberate indifference can be shown where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial, necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment." Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).[5]

**B.   Section 1983 Analysis**

Defendant argues that they are entitled to summary judgment because Plaintiff has failed to raise a triable issue of fact as to whether any member of CMC was deliberately indifferent to Plaintiff's serious medical needs. (Def.'s Br. at 6.)

---

[5] Prison authorities are allowed considerable latitude in the diagnosis and treatment of prisoners. See Durmer, 991 F.2d at 67. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Only where a prison official has acted with deliberate indifference will those actions affront "evolving standards of decency." Estelle, 429 U.S. at 106. Indeed courts, have found deliberate indifference where a prisoner's medical needs were all but ignored. See Andrews v. Camden County, 95 F. Supp. 2d 217 (D.N.J. 2000) (holding that there was an issue of material fact that prison officials were deliberately indifferent where prisoner repeatedly complained of an infected toothache and did not receive treatment).

Specifically, Defendant argues that, in its earlier opinions, this Court has already determined that Plaintiff was given adequate medical care after his injury at the ACJF. (Id. citing Crymes, 2005 U.S. Dist. LEXIS 16602 at *15.) As such, Defendant, serving "only as an administrative and clerical corporate entity that provided licensed medical physicians and nurses for the [ACJF] Medical Department . . ., Plaintiff's claim that Defendant CMC provided either negligent or inadequate medical care must fail as a result of this Court's determination that 'the medical attention given to [Plaintiff] was adequate.'" (Id.)

### 1. Relevant Time Period of Inquiry

In assessing whether a genuine issue of material fact exists as to Plaintiff's Section 1983 claim, this Court need only address whether Defendant's actions from February 10, 2003 through February 13, 2003 constitute deliberate indifference to Plaintiff's serious medical needs and not whether the eight-day delay (from February 14 through February 21) from the time Plaintiff was examined by Dr. Acosta to the time that Plaintiff was seen by an orthopedist constitutes deliberate indifference. The issue of whether the eight-day delay caused Plaintiff's finger deformity has already been decided by this Court with the Court granting summary judgment to Dr. Acosta, an employee of Defendant, on that very issue. According to Dr. Haines' July 2006 medical report, the eight-day delay was not the proximate

cause of Plaintiff's injuries.  See Crymes, 2006 U.S. Dist. LEXIS 14293 at 10-11.  By adopting Haines' report in his reply papers (see Pl.'s Reply Br. dated August 3, 2006 at 6), the Court concluded that Plaintiff tacitly agreed that there is no genuine issue of material fact regarding whether Dr. Acosta or any other medical personnel acted with deliberate indifference in allowing an eight-day delay before the orthopedic consult or that this delay in treatment was the proximate cause of the deformity to Plaintiff's finger.[6]  As such, Plaintiff cannot argue that this Defendant acted with deliberate indifference with respect to this eight-day delay and the only relevant issue before the Court is whether Defendant's staff was deliberately indifferent to Plaintiff's serious medical needs from February 10, 2003 through February 13, 2003.

### 2. No Genuine Issue of Material Fact Exists and Defendant is Entitled to Summary Judgment on Defendant's Eighth Amendment Claims.

Crymes contends that his medical treatment was inadequate and that Defendant's staff disregarded his injury.  This argument holds little weight, however, in light of the fact that, as this Court found when it granted summary judgment in favor of the Atlantic County Government and other prison officials,

---

[6] Specifically, in his reply papers, Plaintiff adopts Dr. Haines' expert report by stating that "[i]n light of these facts plaintiff as well shall utilize, herein, Dr. Haines['] as far as the specifics plaintiff [sic] evidence herein."  See Pl.'s Reply Br. dated August 3, 2006 at 6.

13

Plaintiff's medical treatment from February 10 through February 13 was adequate.  Plaintiff's injury occurred on February 10 at which point he was escorted the ACJF medical department where one of Defendant's nurses examined Plaintiff's finger.  According to the nurse's note (and Plaintiff's Complaint) the nurse immediately notified Dr. Acosta who ordered that Plaintiff's hand be x-rayed.  The next day, on February 11, Plaintiff received an x-ray on his hand.  According to the nurse's progress notes, Plaintiff was also treated with over-the-counter pain-killers (Motrin).  Also that day, Plaintiff's x-ray was read by Dr. James E. Kovacs, M.D., a radiologist who concluded that "[t]here is a dislocation of the proximal interphalangeal (PIP) joint with posterior (dorsal) displacement of the middle phalynx" and that "[n]o discrete fracture is seen."  Finally, on February 13, 2003, Plaintiff was examined by Dr. Acosta, who ordered the orthopedic consult.

Based on Plaintiff's own account and the undisputed facts presented by Defendant (even giving all reasonable inferences in favor of Plaintiff as this Court) this Court concludes that no genuine issue of material fact exists as to Plaintiff's claims of an Eighth Amendment violation by Defendant because Plaintiff's treatment was adequate and not disregarded by Defendant's staff. See Lanzaro, 834 F.2d at 346 (stating that mere "disagreement as to proper medical treatment [will not] support a claim of an Eighth Amendment violation.") The fact that several medical

14

professionals employed by Defendant, as described supra, examined Plaintiff demonstrates that the staff was responsive to Plaintiff's medical conditions.  Plaintiff was seen the day of the accident and treated with pain killers.  The next day Plaintiff was seen by a nurse and a staff member arranged for Plaintiff's finger to be x-rayed and the x-ray to be reviewed by a radiologists.  Two days later, Plaintiff's finger was examined by a doctor.  No reasonable jury could conclude that Defendant's staff had "disregard[ed] an excessive risk to inmate health or safety," Farmer, 511 U.S. at 828, or intentionally refused to provide medical care.  Durmer, 911 F.2d at 68.  In light of this treatment, it is clear to this Court that the medical attention given him was adequate.

The Court's conclusion today mirrors its conclusion in its earlier opinion addressing Plaintiff's claims against prison officials. Crymes, 2005 U.S. Dist. LEXIS 16602 at *14.  Specifically, in the ACJF's motion for summary judgment, the Court pointed to all of the treatment that Plaintiff received in the three days following the accident and concluded that "[i]n light of all of Plaintiff's treatment, it is apparent that the medical attention given to him was adequate." Id.  Moreover, as is relevant in this case, the Court concluded that

> Even if, in hindsight, the intensity of these medical examinations was not optimal, or even if the medical personnel were mistaken in their perception of the seriousness of Plaintiff's dislocation, such

15

>    circumstances speak, at most, of negligence and not of deliberate indifference. Such circumstances, even if proven, do not rise to the level of an actionable violation of the Eighth Amendment's cruel and unusual punishment clause.

Id.

Bolstering the undisputed facts regarding Plaintiff's treatment, is the Haines Report which centers on the time and protocol followed by Defendant's nursing and administrative staff under the directives of medical doctors. Dr. Haines' report states, specifically that:

>    Mr. Cryme's injury was <u>not</u> caused by any action or inaction on the part of CMC. Mr. Crymes [himself] reports that Dr. Acosta was contacted immediately after Mr. Crymes' injury on 2/10/03 and that the staff of CMC followed Dr. Acosta's orders. Likewise, Dr. Acosta reports that he did not assess Mr. Crymes' injury as requiring urgent or emergent care.
>                 *   *   *   *
>    The staff of CMC appropriately took direction from Dr. Acosta, the physician . . . . The care provided to Mr. Crymes by CMC was wholly appropriate.

(Haines Report at 3.) Plaintiff has offered no facts or persuasive arguments to counter Defendant's expert's testimony or demonstrate that a genuine issue exists as to Plaintiff's Eighth Amendment violation claim. As set out in Rule 56(e), Fed. R. Civ. P., the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Instead, a plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions." <u>Gans</u>, 762 F.2d at 341. Here, because Plaintiff has failed to come forward with

16

sufficient evidence to demonstrate that a genuine issue of material fact exists, summary judgment in favor of Defendant is appropriate.

**IV. CONCLUSION**

Plaintiff's claim under 42 U.S.C. § 1983 against Defendant for failure to properly treat Plaintiff's dislocated finger must be dismissed because, based on the undisputed facts and Plaintiff's own account, no reasonable jury could find that Defendant of any member of Defendant's staff acted with "deliberate indifference" in their treatment of Plaintiff.  In addition, because Plaintiff concedes that he has no claim of medical negligence against Defendant, this claim will also be dismissed.[7]

---

[7] Pursuant to Rule 21, Fed. R. Civ. P., the Court will exercise its discretion to drop the defendant named "Paul Oronterio" and the two "John Doe" defendants (Geraldine (Jerry) Doe and Jane Doe) listed on the docket in this action. "[P]arties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21; see also Adams v. City of Camden, No. 05-7779, 2006 U.S. Dist. 82471 (D.N.J. Nov. 8, 2006). Plaintiff has failed to: (1) specifically identify the two Doe defendants; (2) indicate how these defendants might be responsible for Plaintiff's injuries; or (3) come forward with any showing that this Court has personal jurisdiction over them. Moreover, with respect to Defendant Paul Oronterio, two years have passed and Plaintiff has yet to indicate how this defendant might be responsible for his injuries, or to come forward with any showing that the Court has personal jurisdiction over him. Plaintiff has also not presented this action against the Doe defendants or Oronterio, despite having allegedly served the Complaint upon them more than two years ago.  Such failure to prosecute subjects these dormant claims to dismissal without prejudice under L. Civ. R. 41.1(a).  Accordingly, all claims against Paul Oronterio and the Doe defendants are terminated and the case shall be closed.

The accompanying Order will be entered.

**February 7, 2007**             **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                      United States District Judge